442 P.2d 581

Arsenio GARCIA, Plaintiff-Appellee,

v.

SOUTHERN PACIFIC COMPANY, a corporation, Defendant-Appellant.

No. 8493.

Supreme Court of New Mexico.

May 20, 1968.

Rehearing Denied July 9, 1968.

White, Gilbert, Koch & Kelly, Santa Fe, for appellant.

Lorenzo A. Chavez, Melvin L. Robins, Albuquerque, Manford .Rainwater, Tucumcari, for appellee..

OPINION

CARMODY,. Justice. ·

Plaintiff, in this FELA case (45 U.S.C., § 51 et seq.), recovered judgment for $35,-000.00, based upon the jury's verdict, and the defendant railroad appeals.

Three questions are raised: (1) failure to submit contributory negligence to the jury, (2) receipt in evidence of mortality tables and an instruction as to their use as being error because there was no substantial evidence of permanent disability, and (3) that the verdict was excessive. The issue relating to the use of the mortality tables is dispositive of the appeal.

The plaintiff was injured in an accident which occurred when a crane toppled over on its side during an attempt to lift a damaged freight car. It appeared from the evidence that the plaintiff had returned to work on the same job he had held prior to the accident and that he actually earned greater compensation because of additional overtime than he had before. At the close of the plaintiff's case, over objection by the railroad, the court allowed mortality tables to be introduced in evidence, and subsequently gave an instruction with respect to plaintiff's life expectancy.

The plaintiff did not testify that he had incurred any permanent disability. The only testimony in the record relating to permanent disability was that adduced from plaintiff's expert witness to the effect that the plaintiff had a "permanent condition," indicating a tearing of one, and possibly two, discs. The doctor did not testify that this would have any effect on the plaintiff's job future. To the contrary, he testified that the plaintiff should be able to perform his present job without difficulty; that although the X-ray pictures of the plaintiff might show increased impairment in the future, the plaintiff would not necessarily feel any worse; and, finally that all of the plaintiff's complaints and symptoms would disappear in a matter of months, or, at the most, in a year or so. There is no other testimony which would have justified the allowance in evidence of the mortality tables, or giving the instructions relating to the use thereof. Nevertheless, the court instructed the jury that it might consider that plaintiff had a life expectancy of thirty-one years. Instruction No. 22 was a general instruction to the effect that unless there had been shown by a preponderance of proof leading reasonably to the conclusion that plaintiff's injuries were reasonably certain to be permanent, then they should not assess damages for permanent injury. The court's instruction No. 21, relative to the elements of damages which could be considered by the jury, stated they could consider "the nature, duration and extent of the injury, the pain and suffering experienced as a result of the injury, the reasonable expense of necessary medical care, treatment and services received, including prosthetic devices, the value of earnings lost to date." Significantly, no instruction was tendered by the plaintiff, nor given by the court, with reference to future earnings or capacity, future medical expenses, or prospective pain and suffering.

It would be of little benefit to review the testimony in detail. We have carefully examined the entire record and conclude there simply is not sufficient evidence which would have justified the jury in making an award for a lifelong injury. Although the medical testimony is somewhat involved, it would be accurate to say that the doctor testified the plaintiff suffered a permanent condition, i. e., tearing of the disc spaces, but he did not testify that such a condition would cause any disability in performing the usual duties of his employment in the future. He testified the disc space would narrow and develop spurs, but failed to testify as to the future effect of the narrowing and spurring of the disc spaces. We do not believe the testimony of the expert in the instant case contains any serious contradictions between that adduced on direct and cross examination, as was true with respect to the plaintiff's testimony in Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967) —here, although, as stated, there is proof that the accident caused a condition that is permanent, there is a total lack of proof that any permanent disability or damage resulted therefrom. The issue is not one of weight of evidence, but rather arises out of

its total absence. Though the doctor's testimony varied as to minor details, usually depending on who was examining him, in essence it varied but little from that stated in his report made prior to the trial, which was:

"It is probable that his symptoms will persist to some extent for several months. No accurate prediction as to when and if they will disappear entirely can be offered."

Considering the testimony in its most favorable light, it still does not tend to show such probability of future injury as to amount to a reasonable certainty that the same is permanent so as to warrant the jury's awarding damages therefor.

The evidence in Curtis v. Schwartzman Packing Company, 61 N.M. 305, 299 P.2d 776 (1956), was somewhat similar to that in the present case—perhaps it was even medically stronger—but there we reversed because the mortality table had been introduced and the court had instructed on future loss of earning power, pain and suffering. We there said:

"The evidence does show loss suffered by plaintiff for a time following the collision, but there is no attempt to show what loss, if any, plaintiff will suffer in the future on account of any possible injury suffered by him.

"The jury could do no more than merely speculate about the plaintiff's future loss, and in order to justify the giving of the instructions as to permanent injury and future loss of earning power and the mortality tables, there must be some evidence which directly gives the jury a means by which to measure damages on that account."

On the authority of the above case and Dominguez v. Albuquerque Bus Co., 58 N.M. 562, 273 P.2d 756, 50 A.L.R.2d 414 (1954), we conclude error was committed by the trial court and it was prejudicial.

There is no way to tell what proportion, if any, of the verdict was a result of this error; a considerable amount of the total award might have been on account of future loss of earning power and future pain and suffering. Curtis v. Schwartzman, supra. The fact that the court gave instruction No. 22 could not serve to make the error any less prejudicial. The jury having been misled by the submission of the false issue, the resulting prejudice could not be eliminated by giving of a general abstract instruction. See, Even v. Martinez, 75 N.M. 132, 401 P.2d 310 (1965); and Pitner v. Loya, 67 N.M. 1, 350 P.2d 230 (1960). Compare, Embrey v. Galentin, 76 N.M. 719, 418 P.2d 62 (1966); Worrick v. Alarid, 75 N.M. 67, 400 P.2d 627 (1965); and Horrocks v. Rounds, 70 N.M. 73, 370 P.2d 799 (1962).

Inasmuch as the case must be reversed, requiring a new trial, we need not discuss the other claims of error made by the railroad. However, to prevent possible future error upon retrial, we caution the court to carefully consider all of the testimony with respect to the accident itself and not withdraw from the consideration of the jury the question of contributory negligence, unless satisfied, according to the same liberal standards as are used to test primary negligence in FELA cases, that there is no contributory negligence. Page v. St. Louis Southwestern Railway Co., 349 F.2d 820 (5th Cir.1965); Ganotis v. New York Central Railroad Co., 342 F.2d 767 (6th Cir.1965); and Daulton v. Southern Pacific Co. 237 F.2d 710 (9th Cir.1956), cert. denied, 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 549 (1957); and see, Gulf, Colorado & Santa Fe Railway Company v. McClelland, 355 F.2d 196 (5th Cir.1966); Justice v. Penn R.R. Co., 41 Ill.App.2d 352, 191 N.E.2d 72 (1963); and Marty v. Erie R.R.Co., 62 N.J.Super. 458, 163 A.2d 167 (1960).

The case will be reversed with instructions to the trial court to set aside the verdict and the judgment based thereon, and to grant a new trial. It is so ordered.

CHAVEZ, C. J., and MOISE, J., concur.