442 P.2d 800

Frances E. MAISEL, Plaintiff-Appellee,

v.

WHOLESOME DAIRY, INC., a corporation, and Clifford A. Martinez, Defendants.

WHOLESOME DAIRY, INC., a corporation, Cross-Plaintiff and Appellant,

v.

Clifford A. MARTINEZ and Charles Cook, Cross-Appellees.

No. 175.

Court of Appeals of New Mexico.

June 7, 1968.

 

E. Forrest Sanders, William W. Bivins, Mark B. Thompson, III, Las Cruces, for appellant.

Benjamin Sherman, Ray Hughes, Deming, for appellee.

## OPINION

WOOD, Judge.

This is an automobile accident case. The jury awarded damages to Maisel and Cook. Wholesome (Wholesome Dairy, Inc.) appeals. The issues are: (1) Is the Maisel verdict excessive; (2) Should the jury have been informed of Maisel's life expectancy; and (3) Should the jury have been allowed to consider the value of earnings lost in determining Cook's damages?

*Is the Maisel verdict excessive?*

Chavez v. Atchison, Topeka & Santa Fe Railway Co., 77 N.M. 346, 423 P.2d 34 (1967) states:

> "The question of excessiveness is determined by (1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder. * * *"

See Hughes v. Walker, 78 N.M. 63, 428 P. 2d 37 (1967).

The jury awarded Maisel $30,000.00. Wholesome contends that the evidence does not support the award and that the verdict was the result of passion, prejudice, partiality and sympathy.

In contending that the award is not supported by substantial evidence, Wholesome points out that (1) Maisel suffered from a preexisting hip condition and the proof does not establish that changes in this condition resulted from the accident; (2) the fractures have healed; (3) there is no testimony as to future medical expenses; (4) she is able to get out of the house and "get about;" (5) the evidence shows that future pain and future changes in her physical condition are possible, but are not characterized as probable. We agree, but note that these contentions do not reach the issue. Wholesome views the evidence in the light most favorable to it; the rule on appellate review is to view the evidence in the light

most favorable to the plaintiff. Chavez v. Atchison, Topeka & Santa Fe Railway Co., supra.

■ Maisel suffered trochanteric fractures; the trochanters were not affected by the pre-existing condition, identified as coxasenilis and described as a frozen hip. One fracture was an intertrochanteric fracture which extended six inches down the shaft of the femur as a long spiral spike of bone. In addition the greater trochanter was broken off. While the fractures have healed, there are post-traumatic changes in the fracture area described as cystic or sclerotic changes.

She was hospitalized for eighteen days, during which time the intertrochanteric fracture was reduced by surgical procedure. Because of her condition she was given two blood transfusions. Her medical, surgical and hospital expenses total $1,527.27. She required assistance at home for approximately three months; however, for a part of this time she could get about in a wheel chair or on crutches.

Prior to the accident, Maisel used her back to compensate for her hip condition and did most of the ordinary things—specifically, she had painted her kitchen, climbed ladders and danced. She testified that since the accident she could no longer do these things.

There is testimony that she has and continues to suffer from pain (some fifteen months after the accident) and that her pain is disabling, that as a result of the accident her disability of the right hip has increased 20% over her pre-existing condition, that the pain and the increased disability make it more difficult to compensate for the limitation of motion resulting from the pre-existing condition. There is evidence that the increase in disability is permanent.

Wholesome would have us compare the evidence here with the evidence stated in Hanberry v. Fitzgerald, 72 N.M. 383, 384 P.2d 256 (1963). In Hanberry the principal injury was a fractured dislocation of the left hip joint. A remittitur from $199,-000.00 to $75,000.00 was ordered or the al-

ternative was a new trial. It is doubtful that a comparison of this case with Hanberry would benefit Wholesome. However, such a comparison is improper. Terrel v. Lowdermilk, 74 N.M. 135, 391 P.2d 419 (1964) states:

"* * * What this court may have done in other cases, or what courts of other jurisdictions may have decided in cases involving similar injuries, is of no consequence. * * *"

■ The reason is that it is not feasible for appellate courts to retry a case based on conflicting testimony; factual determinations are for the trial court, or as in this case, the jury. The appellate function is to determine questions of law. The legal question here is whether there is substantial evidence to support the award made by the jury. The evidence, outlined above, is substantial. See Terrel v. Lowdermilk, supra.

■ Wholesome also contends that it is "obvious" that the verdict was the result of passion, prejudice, partiality and sympathy. It asserts that the verdict resulted from sympathy for Maisel because she was a divorcee caring for her home and a retarded daughter and had a pre-existing physical disability. Instead of being "obvious," there is no indication that these facts caused a verdict based on sympathy. We note that the jury was specifically instructed (a) that sympathy for an injured person was not a proper basis for determining damages and (b) that neither sympathy nor prejudice should influence the jury's verdict.

■ Relying on the damage to the vehicles and tire marks, Wholesome asserts that the impact was slight and the vehicles hardly moved after the impact. On this basis Wholesome contends that the verdict results from passion, prejudice, partiality or sympathy. We fail to see the connection. No matter how slight the physical impact, there is no question about the fractures and the consequences resulting from the fractures up to the time of trial.

■ Wholesome's principal claim that the verdict resulted from passion, prejudice,

partiality or sympathy is based on the fact that no verdict was returned against Martinez. Wholesome's truck was partially blocking Martinez's lane. Seeing this, Martinez turned into the lane of the Cook vehicle; the collision was between the Cook and Martinez vehicles. Maisel, a passenger in the Cook vehicle, sued Martinez as well as Wholesome.

At the beginning of the trial, the court informed the jury that Martinez had not answered and was subject to default on Maisel's claim (no default was entered), that he appeared without counsel and would be allowed to ask questions concerning Maisel's claim. Martinez defended himself. Under the alternative forms of verdict submitted, the jury could have found against either Wholesome or Martinez or against both, or in favor of either or both. The verdict was against Wholesome alone. No verdict was returned as to Martinez. Upon inquiry, each juror made clear his or her intention to exonerate Martinez.

Relying on Bailey v. Jeffries-Eaves, Inc., 76 N.M. 278, 414 P.2d 503 (1966) and Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671 (1952), Wholesome argues that Martinez was negligent as a matter of law. Wholesome contends that passion and prejudice is indicated because Wholesome, a corporation, was found liable while Martinez, who defended himself and was allegedly negligent as a matter of law, was exonerated. We do not agree.

Comparing the jury's action as to Wholesome with the jury's action as to Martinez might have merit if the jury had returned a small verdict against Martinez and the $30,-000.00 against Wholesome. But the jury exonerated Martinez. On the facts, it could have done so either on the issue of negligence or proximate cause. The fact that Martinez was exonerated on the issue of liability is not an indication that the size of the verdict against Wholesome resulted from passion and prejudice.

Nor does the fact that Wholesome is a corporation indicate passion and prejudice. At Wholesome's request, New Mexi-co Uniform Jury Instructions § 15.5 (1966) was given. This instruction informed the jury that Wholesome was entitled to the same fair and unprejudical treatment as an individual. Under the facts Wholesome could have been found liable; it was. As stated previously, the size of the verdict is supported by substantial evidence.

*Should the jury have been informed of Maisel's life expectancy?*

A mortality table showing the life expectancy of a person of Maisel's age was admitted into evidence. The jury was instructed as to the life expectancy shown by the table and how they might consider the table.

Life expectancy tables are admissible where there is substantial evidence tending to show the injuries are permanent. Garcia v. Southern Pacific Company, 79 N.M. 269, 442 P.2d 581, decided May 20, 1968; Curtis v. Schwartzman Packing Co., 61 N.M. 305, 299 P.2d 776 (1956); Dominguez v. Albuquerque Bus Co., 58 N.M. 562, 273 P.2d 756, 50 A.L.R.2d 414 (1954).

Wholesome contends there is no evidence tending to show Maisel's injury in the accident is permanent. We disagree. There is testimony that her present disability to the right hip has increased by 20% over the pre-existing disability and that this increased disability is permanent.

The doctor stated that this percentage increase might be " * * * plus or minus a few percentages * * *." Wholesome asserts that this testimony shows the increased disability is not permanent. This is incorrect. The doctor testified that the extent of increased disability might vary "a few percentages;" this does not eliminate his testimony that the increased amount (whatever the percentage) is permanent.

*Should the jury have been allowed to consider the value of earnings lost in determining Cook's damages?*

The jury awarded Cook $500.00. In arriving at this amount, the jury was instructed that they might consider the value

**314**

of earnings lost as one of the elements of damage.

Wholesome asserts there was no proof of Cook's asserted loss of earnings. We disagree. Cook worked in a cafe jointly operated by him and his wife. Because of the accident he was unable to do his cafe work for two months or more. Cook's wife testified that her husband worked in the cafe eight hours per day, six days a week; that it was necessary to employ someone to take her husband's place while he was unable to do the cafe work; and that she paid the substitute $1.00 per hour plus two meals a day during this period. This is substantial evidence of the value of earnings lost. It was not error to instruct the jury on this issue.

The judgments in favor of Maisel and Cook are affirmed.

It is so ordered.

SPIESS, C. J., and ARMIJO, J., concur.